

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

**Gabbrielle Jacqueline Flores,**
Plaintiff, Pro Se

v.

**Connecticut Department of Children and Families,**
John/Jane Doe Social Workers, Supervisors,
Hospital Staff, and State Actors,
Defendant

**Civil Action No.:**

**PRO SE CIVIL RIGHTS COMPLAINT**
**(42 U.S.C. § 1983)**

**PURPOSE OF FILING:**
To initiate a federal civil rights action.

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(42 U.S.C. § 1983)**

**I. JURISDICTION AND VENUE**

    A. This action arises under the **Constitution and laws of the United States**, including the **Fourteenth Amendment to the United States Constitution** and **42 U.S.C. § 1983**.

    B. This Court has **subject-matter jurisdiction** pursuant to **28 U.S.C. § 1331**, as this action presents federal questions, and **28 U.S.C. § 1343(a)(3) and (4)**, as

this action seeks to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States.

C. This Court is authorized to grant **declaratory and injunctive relief** pursuant to **28 U.S.C. §§ 2201–2202**, and to award **compensatory damages, nominal damages, punitive damages (where permitted), and attorney's fees and costs** pursuant to **42 U.S.C. § 1988**.

D. Venue is proper in the **United States District Court for the District of Connecticut** pursuant to **28 U.S.C. § 1391(b)(1)–(2)** because:
a. All Defendants reside in the State of Connecticut;
b. A substantial part of the events and omissions giving rise to the claims occurred within the State of Connecticut; and
c. The acts and omissions at issue occurred within the geographic boundaries of this District.

E. The events giving rise to this action occurred in Connecticut, including but not limited to the Plaintiff's **placement in state custody**, **medical and psychiatric hospitalization, treatment and restraint while a minor**, and the **policies, practices, supervision, and decision-making of the Connecticut Department of Children and Families** and its agents.

F. At all relevant times, Defendants acted **under color of the laws, customs, and usages of the State of Connecticut**, within the scope of their employment, authority, or agency, and pursuant to official policies, customs, or practices.

G. The District of Connecticut is the proper and most convenient forum for this action because the Plaintiff resides in Connecticut, the Defendants conduct official business in Connecticut, relevant records and witnesses are located in Connecticut, and the alleged constitutional violations occurred within this District.

**Statute of Limitations and Tolling**
Plaintiff's claims are timely pursuant to applicable tolling doctrines, including minority tolling, delayed discovery, and equitable tolling. Plaintiff was a minor at the time of the constitutional violations and did not have a reasonable opportunity to discover the full extent of Defendants' misconduct until obtaining DCF and medical records in adulthood.

## II. PARTIES

☐ **Plaintiff, Gabbrielle Jacqueline Flores**, is an adult individual and a resident of the State of Connecticut. Plaintiff was formerly a minor child in the custody of the Connecticut Department of Children and Families and brings this action pursuant to 42 U.S.C. § 1983 to redress violations of her constitutional and federal statutory rights.

☐ **Defendant State of Connecticut** is named solely for purposes of prospective declaratory relief and not for monetary damages, consistent with Ex parte Young and the Eleventh Amendment

☐ **Defendant Connecticut Department of Children and Families ("DCF")** is a state agency responsible for the custody, placement, supervision, and protection of children committed to its care. At all relevant times, DCF acted under color of state law.

☐ **Defendant Commissioner of the Connecticut Department of Children and Families** is sued in his or her official capacity for declaratory and injunctive relief and in his or her individual capacity to the extent personal involvement is established. The Commissioner is responsible for policy-making, training, supervision, and oversight of DCF staff.

☐ **Defendant John Doe DCF Social Worker(s)** are individuals employed by DCF who were assigned to Plaintiff's case during her placement, hospitalization, adoption, and post-disclosure periods. These defendants are sued in their individual capacities.

☐ **Defendant Jane Doe DCF Social Worker(s)** are individuals employed by DCF who participated in or failed to intervene in constitutional violations affecting Plaintiff, including the dismissal of abuse disclosures and failure to protect. These defendants are sued in their individual capacities.

☐ **Defendant John Doe and Jane Doe DCF Supervisors and Regional Administrators** are supervisory officials who reviewed, approved, ratified, or failed to correct unconstitutional actions and omissions. These defendants are sued in their individual capacities.

☐ **Defendant Natchaug Hospital, Inc.** is a private entity that acted under color of state law by participating in Plaintiff's involuntary psychiatric hospitalization, restraint, sedation, and confinement in coordination with DCF.

☐ **Defendant Manchester Memorial Hospital** is a medical institution that acted under color of state law by detaining, treating, and transferring Plaintiff while she was in state custody.

☐ **Defendant John Doe Physicians** are medical providers who participated in Plaintiff's involuntary restraint, sedation, hospitalization, and deprivation of liberty without adequate due process. These defendants are sued in their individual capacities.

☐ **Defendant Jane Doe Nurses and Clinical Staff** are medical personnel who participated in or facilitated unconstitutional restraint, confinement, or treatment of Plaintiff. These defendants are sued in their individual capacities.

☐ **Defendant John Doe Security Personnel** are individuals responsible for restraining, guarding, or transporting Plaintiff during her involuntary hospitalization. These defendants are sued in their individual capacities.

☐ **Defendant John Doe Policy-Making Officials of DCF** are individuals responsible for creating, implementing, or enforcing policies, customs, or practices that resulted in the constitutional violations alleged herein, including failures to train, supervise, and protect children in state custody.

**Related Actions**

Plaintiff respectfully notifies the Court that related proceedings arising from the same underlying facts are pending or anticipated in Connecticut state courts, including a civil action against a private individual and a juvenile-court-related filing addressing child-welfare failures.

These matters involve distinct defendants and legal theories. This disclosure is made solely for transparency and coordination and is not intended to invoke supplemental or pendent jurisdiction.

**Preliminary Statement and Judge Facing Summary**

This action arises from Plaintiff's childhood placement and treatment while in the custody of the Connecticut Department of Children and Families ("DCF"). Plaintiff does not seek to relitigate prior neglect or termination proceedings. Rather, this action addresses **distinct constitutional violations that occurred while Plaintiff was under state control and supervision**.

The record establishes that DCF had **actual knowledge** of Plaintiff's vulnerability, trauma history, and psychiatric diagnoses, including Post-Traumatic Stress Disorder and Mood Disorder, as reflected in Department records and inpatient hospitalization at

Natchaug Hospital. These facts are constitutionally significant because they placed state actors on notice of a **heightened risk of harm**, thereby triggering an affirmative duty to protect.

Despite this knowledge, Plaintiff alleges that state actors subjected her to **unnecessary and harmful psychiatric confinement**, failed to ensure trauma-informed care, and placed her in an adoptive home where her trauma designation was used to justify subsidy payments without ensuring her safety, dignity, or emotional well-being.

Plaintiff further alleges that DCF maintained policies, practices, or customs that prioritized placement stability and administrative finality over child safety, including inadequate monitoring of adoptive placements receiving trauma-based subsidies. These practices foreseeably resulted in the exploitation and psychological harm of vulnerable children.

The facts are offered not to impose respondeat superior liability, but to establish **deliberate indifference**, **failure to protect**, and **failure to train or supervise**, consistent with Monell v. Department of Social Services. Plaintiff alleges that the constitutional injuries suffered were a predictable consequence of systemic deficiencies in oversight, training, and trauma-informed practice.

The Court's consideration of these facts is necessary to determine whether Defendants violated Plaintiff's substantive due process rights to bodily integrity, psychological safety, and freedom from state-created danger, and whether equitable and compensatory relief is warranted.

**Plaintiff does not seek review, reversal, or modification of any state-court judgment. This action challenges independent constitutional violations committed by state actors under color of law and is not barred by Rooker-Feldman, res judicata, or collateral estoppel.**

### III. FACTUAL BACKGROUND

[Removal, custody, abuse, hospital restraint, placement failures, financial incentives, trauma designation, and psychological Harm]

1. **Plaintiff Gabbrielle Jacqueline Flores** was born on **June 20, 2000**, in Rockville, Connecticut.
2. On or about **October 22, 2008**, when Plaintiff was **eight (8) years old**, the Connecticut Department of Children and Families ("DCF") invoked an

    **Administrative 96-Hour Hold**, removing Plaintiff from her biological home and placing her under state control.
3. On **October 24, 2008**, DCF filed a **Motion for Order of Temporary Custody and a Petition of Alleged Neglect** in the Superior Court for Juvenile Matters at Rockville. On **October 31, 2008**, the Order of Temporary Custody was sustained, and Plaintiff was formally **committed to DCF custody**.
4. From **October 2008 through March 2010**, Plaintiff remained continuously under the **exclusive care, custody, and control of DCF**, dependent upon the State and its agents for protection, medical care, placement decisions, and safety.
5. During this period, Plaintiff exhibited trauma-related symptoms consistent with severe childhood stress, including anxiety, fear, and behavioral dysregulation. DCF was aware, or should have been aware, that Plaintiff had been exposed to domestic violence, instability, and emotional harm prior to removal.
6. On or about **January 30, 2009**, during a supervised visit with biological parents arranged and overseen by DCF, Plaintiff experienced a severe emotional and behavioral crisis. Rather than receiving trauma-informed de-escalation or protective intervention, Plaintiff was treated as a behavioral problem rather than a traumatized child.
7. As a result of this incident, Plaintiff was transported to **Manchester Memorial Hospital** and subsequently **involuntarily hospitalized and transferred to Natchaug Hospital** for inpatient psychiatric care.
8. Between **January 30, 2009 and February 20, 2009**, Plaintiff was confined at **Natchaug Hospital**, where she was subjected to **forced psychiatric hospitalization**, **chemical sedation**, **restraint**, and **loss of liberty**, while still a minor in DCF custody.
9. During this hospitalization, Plaintiff expressed fear, distress, and statements reflecting trauma, including fear of returning to unsafe environments and concern for protecting others. Medical records reflect that Plaintiff disclosed domestic violence, substance abuse, and fear of harm, yet these disclosures were **not treated as protective warnings requiring heightened safeguarding**.
10. Plaintiff was diagnosed with **Post-Traumatic Stress Disorder and Mood Disorder**, diagnoses that reflected trauma exposure rather than criminal or delinquent behavior. Despite this, Defendants failed to ensure constitutionally adequate procedural protections, least-restrictive alternatives, or meaningful advocacy on Plaintiff's behalf.
11. Following discharge on **February 20, 2009**, Plaintiff was placed in a **therapeutic foster home** licensed through the Village for Families and Children. DCF retained full legal responsibility for Plaintiff's safety, treatment, and placement.
12. On **November 2, 2009**, DCF filed a **Termination of Parental Rights Petition**. Following a contested trial, the petition was **granted on March 24, 2010**, and DCF was appointed **Statutory Parent** of Plaintiff.
13. Throughout Plaintiff's time in state custody, Defendants failed to provide constitutionally adequate protection, failed to respond appropriately to trauma disclosures, and failed to prevent further harm, instead relying on coercive medical interventions and institutional control.

14. Defendants' actions and omissions were not isolated mistakes but occurred pursuant to **policies, customs, and practices** of DCF and cooperating institutions, including failures to train staff in trauma-informed care, failure to supervise decision-making involving psychiatric confinement of children, and failure to protect children from known risks.
15. Plaintiff did not have the capacity, access to records, or understanding necessary to recognize the constitutional nature of these violations until adulthood, when she obtained and reviewed DCF and medical records revealing the scope of Defendants' actions and approvals.
16. As a direct and proximate result of Defendants' conduct, Plaintiff suffered **loss of liberty, psychological harm, emotional distress, and long-term trauma**, the effects of which continue into adulthood.

### SPECIAL-NEEDS ADOPTION, DCF POLICY, AND KNOWLEDGE OF TRAUMA

1. At the time of Plaintiff's adoption, the Connecticut Department of Children and Families ("DCF") had documented Plaintiff's extensive trauma history, including psychiatric hospitalization, diagnoses of Post-Traumatic Stress Disorder and Mood Disorder, and the need for trauma-informed care, as reflected in DCF records and evaluations.
2. Plaintiff was classified as a **special-needs child** within the meaning of **Conn. Gen. Stat. § 17a-116**, which authorizes DCF to provide adoption assistance and services for children whose physical, emotional, or psychological conditions make placement more complex and require additional supports.
3. DCF policy recognizes that children with documented trauma, psychiatric diagnoses, or prior hospitalization require **heightened safeguards**, stable caregiving, and access to appropriate services as a condition of adoption approval. See **DCF Policy Manual, Adoption Services**, including policies governing **special-needs adoptions and adoption assistance**.
4. Under **Conn. Gen. Stat. § 17a-112** and related DCF adoption regulations, DCF is required to assess a child's needs, evaluate the suitability of adoptive placements, and ensure that adoptive parents are informed of and prepared to meet the child's documented needs.
5. DCF adoption policy further requires that adoptive parents of special-needs children understand the child's trauma history and agree to provide care consistent with the child's emotional and psychological needs, including compliance with recommended services and supports. See **DCF Policy Manual § 48-2 et seq. (Adoption Services)**.
6. Adoption assistance and subsidies approved pursuant to **Conn. Gen. Stat. § 17a-116** are intended to ensure that adoptive placements are not only financially feasible but also **protective and supportive**, particularly where a child has a history of abuse, neglect, or trauma.

7. Despite Defendants' knowledge of Plaintiff's special-needs status and trauma history, Plaintiff did not receive the trauma-informed care, protection, or support that DCF policy and Connecticut law require for special-needs adoptive placements.
8. Instead, Plaintiff was subjected to conditions inconsistent with DCF adoption standards and the purposes of adoption assistance, including emotional harm, exploitation, and treatment that disregarded her documented vulnerabilities.
9. DCF policy emphasizes that the **best interests of the child** govern all adoption decisions and post-adoption oversight. See **Conn. Gen. Stat. § 46b-129**; **DCF Policy Manual, Child Welfare Practice Model**. The failures alleged herein occurred notwithstanding these governing principles.
10. Defendants' conduct must therefore be evaluated in light of the **heightened duty of care** arising from Plaintiff's special-needs designation, DCF's documented knowledge of her trauma, and the statutory and policy framework designed to protect children adopted from state custody

## IV. TRAUMA-INFORMED CONTEXT

Plaintiff explains that she is not currently in therapy due to severe institutional trauma arising from state-imposed psychiatric confinement, forced sedation, and repeated failures by child-welfare and medical systems to provide safe, effective care. This avoidance is a direct consequence of Defendants' conduct and cannot be used to excuse or mitigate constitutional violations.

## V. CAUSES OF ACTION

**Defendants affirmatively placed Plaintiff in situations of known danger while exercising exclusive control over her care, custody, and placement, thereby creating or enhancing the risk of harm in violation of Plaintiff's substantive due process rights under the state-created danger doctrine.**

**Legal Basis**

# COUNT I

### § 1983 – Substantive Due Process

Failure to Protect a Child in State Custody

**Legal Authority & Case Law**

- **DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 199–200 (1989)**
  (Once the State takes custody of a child, it assumes an affirmative duty to provide reasonable protection.)
- **Doe v. New York City Dep't of Soc. Servs., 649 F.2d 134, 141–42 (2d Cir. 1981)**
  (State actors may be liable where they exhibit deliberate indifference to abuse of a child in foster care.)
- **Taylor v. Vermont Dep't for Children & Families, 313 F.3d 768, 779 (2d Cir. 2002)**
  (Deliberate indifference to known abuse in state custody violates substantive due process.)
- **Southerland v. City of New York, 680 F.3d 127, 151 (2d Cir. 2012)**
  (Children have a clearly established right to be free from harm while in foster care.)

# COUNT II

## § 1983 – Substantive Due Process

Deliberate Indifference to Serious Medical and Mental Health Needs

**Legal Authority & Case Law**

- **Youngberg v. Romeo, 457 U.S. 307, 315–16 (1982)**
  (Individuals in state custody have a constitutional right to reasonably safe conditions and adequate medical care.)
- **Doe v. New York, 97 F.3d 107, 116 (2d Cir. 1996)**
  (Deliberate indifference to serious medical needs violates substantive due process.)
- **Kulak v. City of New York, 88 F.3d 63, 72 (2d Cir. 1996)**
  (Improper psychiatric confinement and disregard of medical judgment can constitute due process violations.)
- **Vallen v. Connelly, 36 F. App'x 29, 31 (2d Cir. 2002)**
  (Failure to address known psychiatric risks can establish deliberate indifference.)

# COUNT III

## § 1983 – Procedural Due Process

Deprivation of Liberty Without Adequate Safeguards

**Legal Authority & Case Law**

- **Vitek v. Jones, 445 U.S. 480, 491–94 (1980)**
  (Involuntary transfer to a psychiatric facility implicates liberty interests requiring due process.)
- **Southerland v. City of New York, 680 F.3d 127, 142–43 (2d Cir. 2012)**
  (Emergency child removals and placements require meaningful procedural safeguards.)
- **Tenenbaum v. Williams, 193 F.3d 581, 593–95 (2d Cir. 1999)**
  (Removal of a child without due process violates the Fourteenth Amendment absent exigent circumstances.)

# COUNT IV

### § 1983 – Equal Protection

Discriminatory Treatment in Child Welfare System

**Legal Authority & Case Law**

- **Pyke v. Cuomo, 258 F.3d 107, 110 (2d Cir. 2001)**
  (Equal Protection Clause prohibits state actions that disproportionately burden a racial group without justification.)
- **Brown v. City of Oneonta, 221 F.3d 329, 337 (2d Cir. 2000)**
  (Discriminatory application of state power violates Equal Protection.)
- **Morrison v. Johnson, 429 F.3d 48, 54 (2d Cir. 2005)**
  (Selective enforcement and unequal protection based on race is unconstitutional.)

# COUNT V

### § 1983 – Monell Liability

Unconstitutional Policies, Customs, and Practices

**Legal Authority & Case Law**

- **Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)**
  (Municipal entities are liable for constitutional violations caused by official policies or customs.)

- **Connick v. Thompson, 563 U.S. 51, 61 (2011)**
  (Failure to train may establish Monell liability where the need for training is obvious.)
- **City of Canton v. Harris, 489 U.S. 378, 388–89 (1989)**
  (Deliberate indifference in training can constitute an official policy.)
- **Walker v. City of New York, 974 F.2d 293, 297–98 (2d Cir. 1992)**
  (Failure to train or supervise is actionable where policymakers were on notice.)

# COUNT VI

### § 1983 – Failure to Train and Supervise

Against Supervisory Defendants

**Legal Authority & Case Law**

- **Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)**
  (Supervisors may be liable for their own deliberate indifference and unconstitutional conduct.)
- **Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)**
  (Supervisory liability attaches where a defendant knew of and failed to remedy constitutional violations.)
- **Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002)**
  (Failure to supervise can support §1983 liability.

### VI. DAMAGES

As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered substantial injuries and damages, including but not limited to:

a. Loss of liberty as a minor child in state custody, including involuntary psychiatric confinement and restraint;
b. Emotional distress, fear, humiliation, and psychological trauma;
c. Exacerbation of trauma-related symptoms including anxiety, nightmares, and post-traumatic stress;
d. Interference with Plaintiff's bodily integrity and right to personal security;
e. Long-term psychological and emotional harm continuing into adulthood;
f. Loss of normal childhood development, safety, and stability.

Plaintiff is entitled to compensatory damages in an amount to be determined at trial, nominal damages for the violation of her constitutional rights, and punitive damages against individual Defendants whose conduct was reckless, callous, or demonstrated deliberate indifference to Plaintiff's federally protected rights.

## VII. RELIEF REQUESTED

WHEREFORE, Plaintiff Gabbrielle Jacqueline Flores respectfully requests that this Court enter judgment in her favor and grant the following relief:

A. Declare that Defendants' acts and omissions violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution;

B. Declare that Defendants' policies, customs, and practices regarding the treatment, hospitalization, and protection of children in state custody are unconstitutional;

C. Award compensatory damages against Defendants in their individual capacities for the physical, emotional, and psychological harm suffered by Plaintiff;

D. Award nominal damages to vindicate the violation of Plaintiff's constitutional rights;

E. Grant appropriate injunctive and prospective relief requiring Defendants to implement constitutionally adequate training, supervision, and trauma-informed safeguards for children in state custody;

F. Award costs and expenses pursuant to 42 U.S.C. § 1988 and other applicable law;

G. Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

**Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Gabbrielle Jacqueline Flores hereby demands a trial by jury on all issues so triable.**

**Respectfully submitted,**

## VIII. VERIFICATION

I, **Gabbrielle Jacqueline Flores**, hereby verify under penalty of perjury pursuant to 28 U.S.C. § 1746 and applicable state law that I am the Plaintiff/Petitioner in this action, that I have read the foregoing Complaint/Petition/Motion, and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _6__ day of ____January___, **26**, at _____Hartford, CT_.

Attach IFP AO 240 Form

Gabbrielle Jacqueline Flores

Plaintiff, Pro Se

45 Barbour st

Hartford, CT 06120

8604660425

floresgabbrielle@gmail.com

*[signature]*

**Exhibit A:**

## STATEMENT OF PURPOSE

**Plaintiff:** Gabbrielle Jacqueline Flores
**Nature of Action:** Federal Civil Rights – 42 U.S.C. §1983

This federal action is filed to seek review and accountability for constitutional violations that occurred while Plaintiff was a minor in state custody. It is brought with respect for the Court and with recognition of the Court's limited and specific role in addressing violations of federal rights.

This filing is **not intended to relitigate state custody determinations**, nor to substitute this Court's judgment for that of juvenile or family courts. Rather, it addresses **distinct and independent constitutional harms**—including failures to protect, deliberate indifference, and systemic deficiencies in oversight—that arose under color of state law.

Plaintiff has also filed related actions in Connecticut courts addressing separate aspects of the same factual history, including civil claims against private actors and juvenile-court filings related to child-welfare oversight. These matters are **parallel, not duplicative**, and are structured to respect jurisdictional boundaries.

The purpose of this federal filing is to ensure that constitutional protections afforded to children in state custody are meaningfully enforced, and that policies or practices that allow preventable harm to persist are subject to lawful review. Plaintiff brings this action not only for individual redress, but to affirm the principle that state authority over children carries a heightened duty of care.

This filing is made in good faith and with the intent that careful judicial review will contribute to accountability and the prevention of future harm to other children similarly situated.

Respectfully submitted,
**Gabbrielle Jacqueline Flores**
Plaintiff, Pro Se
Hartford, CT 6 January 2026